42375. LIFE & CASUALTY INSURANCE COMPANY OF TENNESSEE v. WEBB, Administrator.

ARGUED OCTOBER 4, 1966—DECIDED MARCH 31, 1967.

522

*Hammond Johnson, Jr.,* for appellant.
*Herbert R. Edmondson,* for appellee.

EBERHARDT, Judge. When this case was on prior appeal we held that Sec. 2 of the Act of 1952 (Ga. L. 1952, p. 288; *Code Ann.* § 113-909) "does not affect the payment of the proceeds of a policy where the beneficiary named therein with malice aforethought kills the insured, unless the killing is done for the purpose of receiving benefits under such insurance contract on the life of the deceased," and that where, as here, "an action is brought by the heirs of the deceased insured against the insurance carrier under the above section and the petition fails to allege that the killing was done for the purpose of receiving benefits under the insurance contract, the petition fails to set forth a cause of action. . ." *Life & Cas. Ins. Co. v. Webb,* 112 Ga. App. 344, supra.

It is true that in rendering our opinion we overlooked and did not consider the effect of the amendment of 1959 (Ga. L. 1959, p. 299) and we were in error to the extent that the amendment would have authorized a different result as to requirements of the petition, but nevertheless our holding, right or wrong, is the law of this case and became binding upon the parties, the trial court and this court.

Prior to the appeal from the overruling of a general demurrer to the petition plaintiffs had amended their petition by alleging that Ernest Lee McDaniel, husband of the insured, "did, on the 24th day of September, 1959, in the county of Barrow, unlawfully, feloniously, and with malice aforethought, kill and murder Lula Bell W. McDaniel by shooting her, the said Lula Bell McDaniel, with a double barrelled shotgun, contrary to the laws of said state, the good order, peace and dignity thereof." After our judgment on the appeal and before the remittitur was made the judgment of the trial court the petition was further amended by alleging that "said killing was done by the said Ernest Lee McDaniel for the purpose of receiving the benefits and proceeds under said insurance policy which was issued on the life of Lula Bell W. McDaniel."

Thus, under the law of the case as established by our prior decision and under the pleadings, as amended, plaintiffs had the burden of proving (1) that Ernest Lee McDaniel, the beneficiary under the policy now sued on, feloniously killed his wife, the insured, and (2) that he did so for the purpose of collecting the proceeds or benefits under the policy. Chief Judge Felton, Judges Hall, Deen and the writer of this opinion view the evidence as being insufficient to support a finding that McDaniel killed his wife. There is no direct evidence that he shot her, though there are some circumstances which indicate that he *may* have done so. There is some direct evidence that he did not. In our view of it the circumstances on which plaintiffs must rely as proof that he shot and killed her are so weak, vague and inconclusive as to be wholly insufficient to overcome a contrary conclusion demanded by the other evidence. Others of the majority, however, feel that on this issue a jury question was raised.

So for the nonce we assume with others of the majority that

the circumstances were sufficient to raise a jury question as to whether McDaniel did shoot his wife, and if so, whether the shooting was felonious in character; even so, there is a total absence of evidence that he did it for the purpose of collecting or receiving the proceeds from this policy. *There is not a word of evidence in this record that he knew or even suggesting that he knew that the policy existed.* The only evidence relative to the existence of the policy (other than the policy itself) came from a sister of the insured, who testified that Mrs. McDaniel obtained the policy before she married him in 1954, and that at some time after their marriage she had the beneficiary changed, naming him. He did not procure the issuance of the policy and there is not a scintilla of proof that the husband had anything to do with the effecting of the change of beneficiary or that he knew that it had been done, and no proof that he ever made a single payment of premium or that he had any knowledge his wife did so. How, then, can it be concluded that McDaniel killed his wife to obtain the proceeds from an insurance policy the existence of which he was, insofar as the evidence discloses, wholly unaware of? The question answers itself.

The one circumstance on which plaintiffs rely to prove this essential part of their case is a statement which McDaniel made to Mrs. Florence Teal when she took his car to go call for an ambulance, admonishing her to be careful because "I haven't got any insurance on that car." There is no connection between accident insurance on his wife and liability insurance on his car. This statement simply proves, if anything, that he had no insurance on the car.

On this crucial point, then, it is inescapable that plaintiffs wholly failed to make out a case; the evidence demanded a verdict for the defendant, and the judgment must be reversed.

Since we reach this conclusion as to the general grounds of the motion for new trial it is unnecessary that we deal with the special grounds.

*Judgment reversed. Felton, C. J., Bell, P. J., Jordan, Hall, Pannell, Deen and Quillian, JJ., concur. Frankum, P. J., concurs in the judgment.*